**In re WILLIAM L. SABER,
M.D., P.C., Debtor.**

**No. 07–11764 MER.**

United States Bankruptcy Court,
D. Colorado.

April 26, 2007.

---

4. *Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 1746, 164 L.Ed.2d 480 (2006).

5. *Id.*

6. *See* majority Opinion at n. 14.

Jay S. Horowitz, Jeffrey Weinman, William A. Richey, Denver, CO, for Debtor.

Paul Moss, Denver, CO, for U.S. Trustee.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Motion for Relief from the Requirements of 11 U.S.C. § 333 that a Patient Care Ombudsman be Appointed (the "Motion"). The Court has reviewed the pleadings, the testimony, and the relevant legal authority and makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) as it concerns the administration of the Debtor's estate and may affect the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship.

## FACTUAL BACKGROUND

William L. Saber, M.D., P.C. (the "Debtor") filed its Chapter 11 voluntary petition on March 2, 2007. On March 9, 2007, the

Debtor filed the present Motion seeking relief from the requirements of 11 U.S.C. § 333.[1] The office of the United States Trustee (the "Trustee") did not file a response to the Debtor's Motion, however its representative appeared and participated at the evidentiary hearing in this matter.

The Debtor is a medical professional corporation in the business of providing plastic and reconstructive surgery to its patients. Dr. William Saber, M.D. ("Dr. Saber") is the sole owner and sole physician of the Debtor which employs three additional employees: a medical assistant, a patient coordinator and a part-time receptionist.

Dr. Saber is licensed by the State of Colorado and the state medical board and has practiced medicine for over twenty years. His practice is limited exclusively to plastic and reconstructive surgery. In this regard, Dr. Saber testified he performs routine or minor surgeries on-site at his medical office. Dr. Saber indicated his on-site surgeries are for treatment of "lumps, bumps and moles" and require a local anesthetic only. All other surgeries are performed at hospitals or out-patient surgery centers not owned or controlled by the Debtor.

When Dr. Saber was questioned regarding patient privacy and patient medical records, he indicated that under both state law and current medical board requirements he has an independent duty as a physician to maintain all patient records for at least seven years after a particular medical service is provided. These patient records are securely maintained either at his medical office or at an off-site location, depending on whether the individual is a current patient.

---

1. Unless otherwise specified, all future statutory references in the text are to Title 11 of the United States

In addition, Dr. Saber indicated the Debtor does not maintain duplicate patient records and current patient records never leave his office except in the rare instance where a patient record is necessary to perform surgery off-site. Under state law and medical board requirements, if a patient requests a copy of his or her medical file or if another physician requests access to a patient's file, the patient must first sign a release indicating the patient agrees to share his or her medical information with another party.

Dr. Saber testified he has maintained an unblemished professional record during his twenty years of practicing medicine and specifically noted the Debtor's bankruptcy case was not precipitated by allegations of deficient patient care or privacy concerns, but rather the entry of a state court judgment against the Debtor obtained by a former employee. He further testified he remains in good standing with the Colorado state medical board, that his continuing medical education requirements are current, and that he maintains malpractice insurance in an amount consistent with or above what is required.

Under these particular facts the Debtor asserts a patient care ombudsman is unnecessary for two reasons. First, the Debtor asserts that although it *may* be a health care business, it is not the type of "health care business" contemplated by the language contained in §§ 333(a)(1) and 101(27A). Second, the Debtor asserts that even if the Court determines it to be a "health care business" under the Bankruptcy Code, the appointment of a patient care ombudsman is unnecessary under the facts of this case. The Trustee suggests the Debtor is a "health care business" as that term is defined by the Bankruptcy Code, although he takes no position whether a patient care ombudsman should be appointed in this particular case.

## DISCUSSION

Section 333 is a relatively new section added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). It states:

> If the debtor in a case under chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

11 U.S.C. § 333(a)(1). Pursuant to this statutory language, the appointment of a patient care ombudsman is mandatory unless (a) the Debtor does not qualify as a health care business, or (b) the Court finds the appointment is not necessary for the protection of patients under the specific facts of the case. Accordingly, the Court must first determine whether the Debtor is a "health care business."

Bankruptcy Code § 101(27A) states a "health care business:"

> (A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—
>
> > (i) the diagnosis or treatment of injury, deformity, or disease; and
> >
> > (ii) surgical, drug treatment, psychiatric, or obstetric care; and
>
> (B) includes—
>
> > (i) any—
> >
> > > (I) general or specialized hospital;

(II) ancillary ambulatory, emergency, or surgical treatment facility;

(III) hospice;

(IV) home health agency; and

(V) other health care institution that is similar to an entity referred to in subclauses (I), (II), (III), or (IV); and

(ii) any long-term care facility, including any—

(I) skilled nursing facility;

(II) intermediate care facility;

(III) assisted living facility;

(IV) home for the aged;

(V) domiciliary care facility; and

(VI) health care institution that is related to a facility referred to in subclauses (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

Based on the above-cited language, the Debtor admits it *may* meet the requirements of § 101(27A)(A)(i) and (ii), although it does not concede this point. However, even if subsection (A) is satisfied, the Debtor specifically argues it does not meet the requirements of subsection (B). Instead, the Debtor indicates the language in subsection (B) demonstrates Congress's intent *not* to include businesses such as a small medical office or a single-physician medical practice within the definition of a "health care business." Rather, the Debtor asserts subsection (B) applies only to large medical institutions such as hospitals, nursing homes, hospices, clinics and other similarly situated entities.

Sections 333 and 101(27A) are recent statutes and there is a paucity of legal authority addressing the application of these statutes and specifically what is meant by the term "health care business."

The Court's research has uncovered only four cases relevant to this subject.

In *In re Medical Assoc. of Pinellas, L.L.C. (Pinellas)*, 360 B.R. 356, 2007 WL 117930 (Bankr.M.D.Fla. Jan. 3, 2007), the Court was asked to determine whether a debtor that provided primarily administrative support to a group of physicians satisfied the "health care business" definition. In making its determination, the Court fashioned a four-part test to determine whether the requirements of § 101(27A) subsection (A) are met. First, the debtor must be a public or private entity. Second, the debtor must be primarily engaged in offering facilities and services to the general public. Third, the facilities and services must be offered to the public for the diagnosis or treatment of injury, deformity or disease. Finally, the facilities and services must be offered to the public for surgical care, drug treatment, psychiatric or obstetric care. *Id.* at 358–359, 2007 WL 117930 at *2. In that case, the Court found the debtor was not primarily engaged in offering facilities and services to the general public. *Id.* at 259–60, 2007 WL 117930 at *3. Instead, the debtor offered non-medical services such as billing, insurance, human resources, and related financial services, as well as some laboratory support to the physicians it served. *Id.* For this reason, the Court determined the debtor did not satisfy the requirements set forth in § 101(27A)(A).

In *In re 7–Hills Radiology, LLC (7–Hills)*, 350 B.R. 902 (Bankr.D.Nev.2006), the Court similarly determined the debtor in that case did not provide services to the general public because the debtor only performed radiological services at the request of a referring physician. *Id.* at 904. The *7–Hills* Court determined the debtor in that case did not qualify under § 101(27A)(B) because that subsection suggests a "health care business" must

have "some form of direct and ongoing contact with patients to the point of providing them shelter and sustenance in addition to medical treatment." *Id.*

A North Carolina Bankruptcy Court determined a debtor engaged in the business of providing dental services also did not fall within the definition of a "health care business." *See In re Banes (Banes)*, 355 B.R. 532, 535 (Bankr.M.D.N.C.2006). The Court's decision was based, in part, on subsection (B), indicating the types of institutions listed as examples appeared to require a debtor to provide housing and treatment for its patients, which the debtor's dental practice did not. *Id.* at 535. In addition, the Court noted the debtor had no active patients which was contrary to the plain language of subsection (A) requiring a debtor be " 'currently' engaged in the ongoing care of patients." *Id.* at 535.

Finally, in a case similar to the case at bar, a Georgia Bankruptcy Court found the appointment of a patient care ombudsman in a single-physician medical practice specializing in obstetrics and gynecology to be unnecessary under § 333(a)(1). *In re Total Woman Healthcare Center, P.C. (Total Woman)*, 2006 WL 3708164 *2 (Bankr. M.D.Ga. Dec. 14, 2006). In *Total Woman*, the physician employed by the debtor performed medical services such as physical exams, ultra sounds and biopsies at her medial office while she performed major surgeries, deliveries and outpatient surgery at two area hospitals. *Id.* *2. The doctor was in good standing with the state medical board and had not received any complaints from patients. *Id.* In addition, the Court found the debtor's bankruptcy filing was not precipitated by allegations of deficient patient care or privacy concerns, but rather by tax liabilities. *Id.* Based on these facts the Court concluded a patient care ombudsman was unnecessary under § 333(a)(1).

## A. Is the Debtor a "Health Care Business?"

### 1. Section 101(27A)(A)

█ It is important to note the subsections of § 101(27A)(A) and of subsection (B) are connected by the conjunctive. Thus a debtor who is a "health care business" must meet every requirement under both subsections for a patient care ombudsman to be appointed. *See In re Banes*, 355 B.R. at 534.

█ Subsection (A) first requires the health care business to be a public or private entity, either for profit or not for profit. *See Pinellas*, 360 B.R. at 358–59, 2007 WL 117930 at *2. As the *Pinellas* Court remarked, this factor "includes almost every conceivable entity." *Id.* at 359, 2007 WL 117930 at *3. The Debtor in this case is a private, for-profit entity and thus meets the first factor. Second, the debtor must be primarily engaged in offering facilities and services to the general public. *Id.* at 358–59, 2007 WL 117930 at *2. Dr. Saber testified the Debtor offers plastic and reconstructive surgery to the general public at its medical office or at an area hospital. Therefore, the Court finds the second factor under subsection (A) is also met. Third, the debtor must offer its facilities and services for the purpose of the diagnosis or treatment of injury, deformity or disease. *Id.* Dr. Saber testified the Debtor treats patients for cosmetic procedures, as well as patients who have had cancer and require reconstructive surgeries. Based on this testimony, the Court finds the Debtor treats patients both for deformity and disease, satisfying the third factor. Finally, a debtor's services and facilities must be offered to the public for surgical care, drug treatment, psychiatric care or obstetric care. *Id.* The Debtor

clearly meets this fourth factor because it provides surgical care for most if, not all of its patients. Thus, the Court finds the Debtor in this case meets all four factors as outlined in § 101(27A)(A) and the *Pinellas* case. *See Pinellas,* 360 B.R. at 358–59, 2007 WL 117930 at *2.

### 2. Section 101(27A)(B)

█ The Debtor must also meet the requirements of § 101(27A)(B). The Debtor asserts Congress did not intend a small medical office or a single-physician practice to be a "health care business" subject to the Bankruptcy Code's patient care ombudsman provision. Although the Debtor cites no case law supporting its position, it is noted the *Pinellas* Court appears to agree with this premise, holding "the examples included in subparagraph (B) appear to contemplate something more than a doctor's office." *Pinellas,* 360 B.R. at 361, 2007 WL 117930 at *4. In support of this statement, the *Pinellas* Court cited to the sparse legislative history of the patient care ombudsman provision. *Id.* However, subsection (B) begins with the word "includes," which the *Pinellas* Court acknowledged is not a limiting word under the Bankruptcy Code. *Id. (citing* 11 U.S.C. § 102(3)) ("In this title ... 'includes' and 'including' are not limiting"). Thus, the list contained under subsection (B) is not an exhaustive list of entities that could be meet the definition of a "health care business."

In this case, the Court does not need to look to the legislative history underlying the patient care ombudsman provision because the statute is clear and unambiguous. Pursuant to § 101(27A)(B)(i)(II), a "surgical treatment facility" falls within the definition of a "health care business." Dr. Saber testified he performs surgeries in his office. Although Dr. Saber characterized the type of surgeries he performs in his office as "minor surgeries with a local anaesthesia," the statute does not differentiate between minor and major surgeries. Thus, the Court finds the Debtor's case is different from the situations presented in *7–Hills* and *Banes* because this Debtor's business is specifically included within the list of examples provided under subsection (B). Therefore, because the Court finds this Debtor is a "surgical treatment facility" it also finds the Debtor satisfies § 101(27A)(B) and therefore meets the definition of a "health care business."

However, the fact this Debtor is a "health care business" does not automatically require the Court to appoint a patient care ombudsman. Rather, § 333(a)(1) provides an exception for cases in which an ombudsman is not necessary under the particular facts and circumstances of a debtor's bankruptcy case. *See* 11 U.S.C. § 333(a)(1).

### B. Should a Patient Care Ombudsman be Appointed in this Case?

█ As indicated previously, the Debtor's bankruptcy filing was not precipitated by concerns relating to the quality of patient care or patient privacy matters. Instead, the Debtor filed for bankruptcy protection due to the entry of a state court judgment based on a contractual dispute between it and a physician whom the Debtor previously employed.

Dr. Saber testified he personally secures and maintains the Debtor's patient records both at the Debtor's physical location or at an off-site location for a minimum of seven years following any patient medical services. Dr. Saber further indicated the Debtor maintains contingency plans with respect to dealing with patient records in the event of an emergency, although no specific testimony was elicited regarding the exact contingency plan. Dr. Saber

also noted the Debtor's financial projections predict positive cash flow during the pendency of the Debtor's bankruptcy case and therefore it is unlikely that a financial crisis would impair the Debtor's ability to continue to provide quality medical care and to protect the privacy of its patients. Finally, the evidence shows Dr. Saber has practiced more than twenty years and remains in good standing in his profession. Based on the testimony provided, the Court is satisfied the Debtor has sufficient procedures in place to enable it to continue to protect the privacy of its patients.

In addition, although no testimony was elicited regarding the potential expenses associated with the appointment of a patient care ombudsman, the Court is concerned the costs involved with the appointment of a patient care ombudsman in this case could preclude this Debtor from reorganizing its affairs under the Bankruptcy Code.[2]

## CONCLUSION

The Court finds the Debtor in this case is a "health care business" as that term is defined in the Bankruptcy Code. Although the Debtor is a "health care business" under the Bankruptcy Code, the appointment of a patient care ombudsman under 11 U.S.C. § 333(a)(1) is unnecessary under the facts and circumstances of this case. Accordingly,

IT IS ORDERED the Debtor's Motion for Relief from the Requirements of 11 U.S.C. § 333 that a Patient Care Ombudsman be Appointed is GRANTED.

---

**2.** However, the Court's concern should not be interpreted as a indication it would not appoint a patient care ombudsman in a single-physician debtor case. Under § 333(a)(1), assuming all requirements are met, the appointment is mandatory unless the Court finds it is not necessary for the protection of patients under the specific facts of the particular case.