**In re SMILEY DENTAL ARLINGTON, PLLC, Debtor.**

**No. 13–44805–DML–11.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Dec. 18, 2013.

---

**33.** 1 Test. of Willis at 11:21:39–11:21:57.

**34.** *Id.* at 11:21:58–11:22:18.

**35.** 2. Test. of McPhearson at 10:38:40–10:39:12.

Eric A. Liepins, Eric A. Liepins, P.C., Dallas, TX, for Debtor.

### *MEMORANDUM OPINION*

D. MICHAEL LYNN, Bankruptcy Judge.

Before the court is the *Order to Show Cause Regarding the Appointment of a Patient Care Ombudsman Pursuant to 11 U.S.C. § 333* (the "Order," at docket no.[1] 23). By the Order, the court set a hearing (the "Hearing") pursuant to 11 U.S.C. § 333(a)(1) and Federal Rule of Bankruptcy Procedure[2] 2007.2(a) to consider why a patient care ombudsman should not be appointed in the Case.[3]

At the Hearing on November 26, 2013, the court heard testimony from Lynh Thy Pham DDS, PA ("Pham"), the owner of Smiley Dental Clinics ("Debtors"),[4] as well

**1.** "Docket no." will hereinafter refer to the corresponding docket entry in the above-captioned bankruptcy case (the "Case").

**2.** Hereinafter, "Rule" or "Rules," as appropriate.

**3.** Shortly after the Order was entered, Debtors filed a *Motion Pursuant to Bankruptcy Rule 2007.2 to Dispense with Patient Care Ombudsman,* docket no. 27, seeking to preempt the appointment of an ombudsman. The State of Texas and the Texas Health and Human Services Commission filed an untitled brief opposing Debtors' motion. Docket no. 36. As the Hearing was set on the Order and not Debtors' motion, the court will treat Debtors' motion and the response to it as responses by the parties to the Order.

**4.** "Debtors" will refer, collectively, to the entities whose bankruptcy cases are being jointly administered with the Case, which include Smiley Dental Arlington, PLLC; Smiley Dental Camp Bowie, PLLC; Smiley Dental Ft. Worth, PLLC; Lynh Thy Pham DDS, PA; J.T. Realty, Inc.; Smiley Dental Asset Management, Inc.; Smiley Dental Beltline, PLLC; Smiley Dental Broadway, PLLC; Smiley Dental Coit, PLLC; Smiley Dental Forest Lane, PLLC; Smiley Dental Garland, PLLC; Smiley Dental Gessner, PLLC; Smiley Dental Management Company, LLC; Smiley Dental Mesquite, PLLC; Smiley Dental Seminary, PLLC; Smiley Dental Shepherd, PLLC; Smiley Dental Skillman, PLLC; Smiley Dental Walnut, PLLC; Smiley Dental Webb Chapel, PLLC; and Smiley Dental Irving, PLLC. *See Mot. for Joint Administration,* docket no. 2.

as argument from Debtors, the U.S. Trustee, and, by and through the office of the Texas Attorney General, the State of Texas and Texas Health and Human Services Commission. No other evidence was received at the Hearing.

The court did not appoint a patient care ombudsman at the Hearing, and, after taking the matter under advisement, now issues this memorandum opinion. Having reviewed the pertinent provisions of the Bankruptcy Code[5] and the Rules, as well as the relevant case law and the record, the court holds that, even assuming that Debtors are health care businesses, a patient care ombudsman is not necessary for the protection of patients in the Case.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR.P. 7052, 9014.

## I. BACKGROUND

Debtors operate nineteen dental clinics that provide general dental services, as well as oral surgery and orthodontic care. At one time, Debtors and affiliates operated as many as thirty-three such clinics. But, according to Pham's testimony, changes in Medicaid reimbursements for orthodontic services resulted reduced cash flow and profitability. As a result, fourteen clinics were closed prepetition, and, on October 23, 2013, Debtors filed voluntary petitions under chapter 11 of the Code for the remaining nineteen clinics. Pham testified that the bankruptcy filings were caused by the reduction in profitability and not as a result of patient care issues or any malpractice claims.

Debtors employ over 100 people, including a number of contract dentists. Pham

testified that Debtors' dentists are all current with their required licenses and covered by adequate insurance. The dentists work in teams to provide oversight and to ensure quality care. Some of Debtors' dentists perform oral surgeries, such as root canals, beyond basic dental cleanings and fillings. Likewise, the dentists provide diagnostic care for various periodontal diseases, but will refer a patient to a specialist for any treatment beyond the dentists' level of expertise. Debtors' clinics do not provide after-hours or overnight care, and the clinics direct patients to call 911 for "life or death" matters.

Some of Debtors' clinics maintain digital medical records stored on a computer database, while other clinics have paper records. Pham testified that these paper records are protected at Debtors' clinics and that patients have access to these records upon request.

## II. DISCUSSION

Congress added several provisions to the Code in 2005 that were intended to protect patients' interests in bankruptcies involving health care businesses by mandating that the court appoint a patient care ombudsman or "patient advocate." *See* Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. No. 109–8, § 1101(a)(2) (2005), *reprinted in* 2005 U.S.C.C.A.N. (119 Stat.) 23, 189 (codified at 11 U.S.C. § 333). Section 333 of the Code provides:

> If the debtor in a case under chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court

**5.** 11 U.S.C. §§ 101 *et seq.* (2006) (the "Code").

finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

11 U.S.C. § 333(a)(1) (2006). Such appointment is limited to debtors operating a "health care business." *Id.* Section 101(27A) defines the term "health care business" as:

> (27A) The term "health care business"—
>
>> (A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—
>>
>>> (i) the diagnosis or treatment of injury, deformity, or disease; and
>>>
>>> (ii) surgical, drug treatment, psychiatric, or obstetric care; and
>>
>> (B) includes—
>>
>>> (i) any—
>>>
>>> (I) general or specialized hospital;
>>>
>>> (II) ancillary ambulatory, emergency, or surgical treatment facility;
>>>
>>> (III) hospice;
>>>
>>> (IV) home health agency; and
>>>
>>> (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and
>>>
>>> (ii) any long-term care facility, including any—
>>>
>>> (I) skilled nursing facility;
>>>
>>> (II) intermediate care facility;
>>>
>>> (III) assisted living facility;
>>>
>>> (IV) home for the aged;
>>>
>>> (V) domiciliary care facility; and
>>>
>>> (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

*Id.* § 101(27A).

■ As Code sections 101(27A) and 333 and the corresponding Rules are relatively recent additions, little authority is available to guide the application of these provisions. Nonetheless, the mechanics of the provisions are relatively straightforward based on the plain meaning of the statute. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Pursuant to the language in the Code and the Rules, the court must appoint a patient care ombudsman unless (1) the debtor does not qualify as a health care business under section 101(27A) or (2) the court finds that the appointment is not necessary for the protection of patients under the specific facts of the case. 11 U.S.C. §§ 101(27A), 333(a)(1); *In re William L. Saber, M.D., P.C.,* 369 B.R. 631, 634 (Bankr.D.Colo.2007). The court will address each of these issues in turn.

### A. Qualification as a Health Care Business Under Section 101(27A)

■ A plain reading of section 101(27A) requires the existence of four elements for a debtor to qualify as a health care business. *In re Med. Assocs. of Pinellas, L.L.C.,* 360 B.R. 356, 360 (Bankr. M.D.Fla.2007). Specifically, (1) the debtor must be a public or private entity; (2) the debtor must be primarily engaged in offering to the general public facilities and ser-

vices; (3) the debtor's facilities and services must be offered to the public for the diagnosis or treatment of injury, deformity, or disease; and (4) the debtor's facilities and services must be offered to the public for surgical care, drug treatment, psychiatric care, or obstetric care. *Id.* The first element "includes almost every conceivable entity," so the inquiry typically focuses on the last three elements. *Id.* at 359. The second element turns on whether a debtor is open to the general public directly, is accessible only by the referral of another physician, or is not at all accessible by patients themselves. *Compare In re Saber,* 369 B.R. at 636 (doctor offering plastic and reconstructive surgery to the general public at his medical office or at an area hospital satisfied the second element), *with In re 7–Hills Radiology,* 350 B.R. at 904 (radiology clinic providing tests to patients only upon referral by a treating physician did "not offer anything to the general public"), *and In re Med. Assocs.,* 360 B.R. at 359–60 (debtor was not engaged in offering facilities and services to general public when primarily providing administrative support to doctors for billing, insurance, human resources, and related financial services). Additionally, the inclusion of "drug treatment" in the fourth element likely references "facilities that treat drug addiction or dependency . . . [rather than] the writing or dispensing of prescriptions (which could include all doctors and pharmacies)." *In re Med. Assocs.,* 360 B.R. at 360 n. 3.

While these elements are contained in subsection (A) of section 101(27A), subsection (B) provides two non-exhaustive example lists of health care businesses. 11 U.S.C. § 101(27A)(B)(i)-(ii). Each list concludes with a catchall provision referencing comparable entities to those listed in the respective list. *Id.* § 101(27A)(B)(i)(V), (ii)(VI).

The few cases that have interpreted section 101(27A)(A)-(B) have not done so uniformly. One line of cases has read subsections (A) and (B) as described above—that is, subsection (A) provides elements and subsection (B) provides examples. *See In re Starmark Clinics, LP,* 388 B.R. 729, 734 (Bankr.S.D.Tex.2008); *In re Alternate Family Care,* 377 B.R. 754, 757 (Bankr. S.D.Fla.2007); *see also In re Med. Assocs.,* 360 B.R. at 360. On the other hand, another line of cases has focused on Congress's use of the conjunctive "and" to connect subsections (A) and (B). *In re Saber,* 369 B.R. at 636; *In re Anne C. Banes, D.D.S. P.L.L.C.,* 355 B.R. 532, 534–35 (Bankr.M.D.N.C.2006); *see also In re 7–Hills Radiology, LLC,* 350 B.R. 902, 905 (Bankr.D.Nev.2006). This second line of cases concludes that, by connecting the two statutes with the conjunctive "and" instead of the disjunctive "or," Congress intended that "a debtor . . . must meet *every* requirement under *both* subsections for a patient ombudsman to be appointed." *In re Saber,* 369 B.R. at 636 (citing *In re Banes,* 355 B.R. at 534) (emphasis added). As a result, these cases engraft a fifth element onto the section 101(27A) analysis, requiring that a debtor's business involve " 'direct and ongoing contact with patients' that provide[s] patients with 'shelter and sustenance in addition to medical treatment.' " *In re Banes,* 355 B.R. at 535 (quoting *In re 7–Hills Radiology,* 350 B.R. at 904).

■ Based on a plain reading of section 101(27A)(A), Debtors likely qualify as health care businesses. Debtors' businesses are private entities within the ambit of the first element. Based on Pham's testimony at the Hearing, Debtors also satisfy the other three required elements. Debtors offer various dental and orthodontic services at the clinics, all of which are openly advertised to the general public,

including through a publicly available website. *See In re Alternate Family Care*, 377 B.R. at 757 ("[T]he very presence of the website suggests [the debtor] has a public presence and . . . it is plausible to suggest that it is offering its services to the general public."). In addition to general dentistry functions, such as annual cleanings and x-rays, Debtors' orthodontic practices focus on diagnosing and treating orthodontic deformities, and the array of available services includes various surgical procedures, such as root canals and the removal of wisdom teeth.[6] Accordingly, Debtors' businesses likely qualify as health care businesses under the four-element test in section 101(27A)(A).

■ At the Hearing, Debtors and the U.S. Trustee advocated that the court should follow the second line of cases applying section 101(27A) and read into the statute an element of direct and ongoing contact with patients while providing shelter and sustenance. By comparing the similarities of the entities listed in subparagraph (B) of section 101(27A), this second line of cases has created an inpatient treatment requirement for health care businesses. *See In re Banes*, 355 B.R. at 535 ("[T]he types of businesses listed are all of such a similar nature in that they provide both housing and treatment . . . that it is difficult to imagine that the legislature would have intended a business that is so fundamentally different, such as an outpatient dental practice, to be read into the definition.").

■ Requiring this judicially created element, which does not appear in section 101(27A), misconstrues the statute. The language in section 101(27A)(B) is *inclu-*sive of the specific entities listed and other similar entities, but not *exclusive* of other business entities meeting the test under section 101(27A)(A). *See* 11 U.S.C. § 102(3) ("In this title . . . 'includes' and 'including' are not limiting."); *see also In re Med. Assocs.*, 360 B.R. at 360–61 ("Each of the examples in subparagraph (B) of section 101(27A) . . . clearly includes long-term care health facilities, such as hospitals and nursing homes. Arguably, the definition could include walk-in clinics where patients stay for short durations."). Other courts have found that businesses providing only outpatient services prepetition may qualify as health care businesses. *See, e.g., In re Genesis Hospice Care LLC*, No. 08–15576, 2009 WL 467265, at *1–2 (Bankr.N.D.Miss.2009) (debtor provided only outpatient medical care to patients in their homes or nursing homes); *In re RAD/ONE, P.A.*, No. 08–15517, 2009 WL 467286, at *1 (Bankr.N.D.Miss.2009) (debtor provided only outpatient radiological services); *In re N. Shore Hematology–Oncology Assocs., P.C.*, 400 B.R. 7, 9, 12 (Bankr.E.D.N.Y.2008) (debtor's health care practice providing services in areas of cancer treatment and blood disorders did not provide any in-patient services).

Even if both subsection (A) and (B) must be met under section 101(27A), Debtors still likely qualify as health care businesses. In *In re Saber*, the court held that a plastic surgeon who performed "minor surgeries with local anesthesia" in his office qualified as a "surgical treatment facility" under section 101(27A)(B)(i)(II). 369 B.R. at 637. Because "the statute does not differentiate between minor and major surgeries[,]" the debtor fell within the example list in subparagraph (B) and thus

---

6. Pham's testimony about Debtors' services is confirmed by Debtors' website that, in addition to general dentistry services, advertises preventative and diagnostic services for periodontal disease, orthodontics, and oral surgeries for wisdom teeth and tooth extractions.

Smiley Dental & Orthodontics, http://smileydental.net/ (last visited Dec. 3, 2013); *see also In re Alternate Family Care*, 377 B.R. at 756–58 (relying upon the debtor's website while determining whether debtor qualified under section 101(27A)).

was a "health care business" within the meaning of section 101(27A). *Id.* The same analysis applies here because Debtors perform various surgeries—such as root canals, wisdom tooth removal, and tooth extractions—and likewise fall within the enumerated entities in subparagraph (B). *See* 11 U.S.C. § 101(27A)(B)(i)(II). As a result, Debtors would likely qualify as health care businesses under the more stringent test articulated by the second line of cases. *See In re Saber,* 369 B.R. at 636; *In re Banes,* 355 B.R. at 534–35.

■ However, while the plain meaning of section 101(27A) would likely characterize Debtors as health care businesses, the court need not decide that issue. The patient care ombudsman analysis is not lock-step, so the court is not bound to decide first whether Debtors are health care businesses under section 101(27A) and then turn to section 333(a)(1). Instead, a court may assume that section 101(27A) has been met for the purpose of analyzing section 333(a)(1). *See In re Vartanian,* No. 07–10790, 2007 WL 4418163, at *2 (Bankr.D.Vt. Dec. 13, 2007) (holding that factors weighed against appointing ombudsman even assuming that the debtor qualified as a health care business); *In re Banes,* 355 B.R. at 532 (same); *In re Total Woman Healthcare Ctr., P.C.,* No. 06–52000, 2006 WL 3708164, at *3 (Bankr. M.D.Ga.2006) (holding that no analysis of section 101(27A) was necessary because no ombudsman was required). Even assuming that Debtors qualify as health care businesses, the court holds that the appointment of an ombudsman is not necessary for the protection of patients under the specific facts of the Case.

### B. Appointment of a Patient Care Ombudsman Under Section 333(a)(1)

■ Section 333(a)(1) makes the appointment of a patient care ombudsman mandatory "unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients." 11 U.S.C. § 333(a)(1). This inquiry is on a prospective basis, "indicating that [Congress] was concerned with appointing patient care ombudsman in cases where health care businesses seeking bankruptcy protection are currently engaged in the ongoing care of patients." *In re Banes,* 355 B.R. at 535.

■ The exception to the mandatory appointment affords a court considerable discretion to weigh the facts of each case when determining whether an ombudsman is required. *In re Valley Health Sys.,* 381 B.R. 756, 761 (Bankr.C.D.Cal. 2008). The party opposing the appointment of the ombudsman bears the burden of overcoming the mandatory appointment. *In re Starmark Clinics,* 388 B.R. at 734. In determining whether this burden has been satisfied, courts have applied a nine-factor test, first announced in *In re Alternate Family Care.* 377 B.R. at 758. These factors include:

(1) the cause of the bankruptcy; (2) the presence and role of licensing or supervising entities; (3) debtor's past history of patient care; (4) the ability of the patients to protect their rights; (5) the level of dependency of the patients on the facility; (6) the likelihood of tension between the interest of the patients and the debtor; (7) the potential injury to the patients if the debtor drastically reduced its level of patient care; (8) the presence and sufficiency of internal safeguards to ensure appropriate level of care; [and] (9) the impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*Id.* Some additional factors courts have considered include:

[1 that] the facility's patient care is of high quality, [2] that the debtor has adequate financial strength to maintain high-quality patient care, [3] that the facility already has an internal ombudsman program in operation or [4] that the situation at the facility is adequately monitored by federal, state, local or professional association programs so that the ombudsman would be redundant.

3 COLLIER ON BANKRUPTCY ¶ 333.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012).

█ Here, Debtors have carried the burden of opposing the mandatory appointment. Based on the evidence presented at the Hearing, Debtors' bankruptcy filings appear to have been caused by a cash flow problem resulting from changes to Medicare reimbursement practices for orthodontics. Debtors' businesses require licenses and insurance coverage, all of which were represented to be current and in accord with state requirements. Pham testified that Debtors currently maintain a mix of electronic and paper medical records for patients and that the paper medical records are adequately protected. No evidence was presented at the Hearing regarding past issues of patient care. Rather, the evidence shows that patients have access to their medical records and, generally, a low level of provider dependency. Both of these factors enable a patient, should he or she choose, to seek alternate dental or orthodontic care. Because malpractice does not appear to have caused the bankruptcy, no likelihood of tension between the interests of the patients and Debtors appears to exist. Finally, Pham testified that Debtors' doctors work in teams, which provides a form of internal oversight and safeguard for patient care. Based on the evidence presented at the Hearing, the court finds that Debtors have carried the required burden

and that the totality of the circumstances weighs against the appointment of a patient care ombudsman at this time.

### III. CONCLUSION

For the foregoing reasons, the court discharges the Order and declines to appoint a patient care ombudsman at this time. But the protection of patients during bankruptcies that involve health care businesses—assuming Debtors so qualify—is an ongoing concern. Accordingly, the court's discharge of the Order regarding the appointment of an ombudsman is without prejudice to a future motion by the U.S. Trustee or a party in interest for such an appointment. FED. R. BANKR. P.2007.2(b).

It is so **ORDERED.**